Plaintiff claims compensation at the rate of $7.80 per week, for a period not exceeding 400 weeks, for disability resulting from injuries sustained in an accident. There was judgment of the First Judicial District Court awarding plaintiff compensation at the rate of $3 per week for a period not exceeding 150 weeks, less compensation already paid. From this judgment defendant appeals, which appeal is answered by plaintiff, who seeks the amendment of the judgment appealed from in accordance with his original claim, or, in the alternative, in an amount of not less than $3 per week for the period of disability, not to exceed 300 weeks.
The facts show that plaintiff was employed by the defendant at an average weekly wage of $12. On the 13th day of October, 1941, while pushing a tramcar loaded with heavy poles, some 50 feet in length, plaintiff's right hand was caught against the skidway on which the poles were customarily unloaded from the tramcar. The resulting injury amputated the distal phalanx of the third or ring finger of plaintiff's right hand. Plaintiff was immediately treated by defendant's physician, which treatment consisted of the trimming away of a portion of the bone of the finger and the drawing together of the skin and cartilage in such manner as to insure the greatest use and least inconvenience upon healing of the wound. Plaintiff was treated by defendant's physician for a period of some six weeks, during which time he was paid compensation, and was then discharged as being able to return to work.
There is no dispute as to the facts above set forth, and the only question before us for determination is the character and effect of the injury suffered by plaintiff.
Plaintiff contends that the injury to his hand was serious and permanent in nature, involving not only the amputation of the finger-tip, but a severe mashing and crushing of the right hand, affecting the nerves and muscles thereof to such extent as to partially paralyze and stiffen the hand in a degree that renders it permanently useless.
The type of injury claimed to have been sustained by plaintiff has resulted in that character of affliction commonly called a "claw hand". The fingers have become stiffened in a semi-clutching position, and permit of no extension or flexion. If this result has been satisfactorily established as caused by the accident set forth, there is no doubt that plaintiff has thereby been rendered partially and possibly permanently totally disabled. It is upon this point that a decision of the case must turn, and, for this reason, the facts connected with the accident and the manner in which the injury was sustained are of prime importance. *Page 649 
The tramcar, which the plaintiff was pushing along its tracks at the time of the accident, consists of an open frame mounted on wheels. The logs, poles or timber intended for treatment are loaded on the tramcar, being supported by a cross-arm which extends across the frame and past the tracks on either side. This cross-arm is inclined down from either end to the center, obviously for the purpose of preventing poles or timbers from being displaced and rolling off on either side of the tram, thereby creating a source of danger. Because of their length, the two poles, which constituted the load on the tramcar being pushed by plaintiff at the time of the accident, were, in reality, being transported by means of the use of two tramcars.
At a point on the tramline there is located a device referred to as a "skidway", which is constructed of a foundation of heavy timber supporting ordinary steel rails mounted on and bolted to the foundation. The distance between the extreme end of the cross-arm of the tram and the end of the steel rail of the skid is approximately one-fourth to one-half inch. The tramcars bearing the poles were customarily halted opposite the skid, and were unloaded by lifting or rolling them from the tram on the skidway.
According to plaintiff's story of the accident his hand was resting on one of the poles when a sudden rolling motion of the pole crushed his hand between it and the skidway, mashing off the end of the ring finger of his right hand, and otherwise inflicting the alleged crushing and mangling injuries to the hand, resulting in its loss of use.
There were no eye witnesses to the accident itself, and for this reason the valuation of plaintiff's testimony must be considered in the light of the surrounding physical circumstances which tend either to prove or disprove his version of the accident.
The testimony of two physicians was introduced on behalf of plaintiff. One of these medical experts testified that he examined plaintiff for the draft board in September, 1941, and again in May, 1942. The doctor testified that the history of the accident, given by the patient, was somewhat confusing, and that, at the time of his examination, there was no evidence of any crushing injury to the hand. He did find evidence of the amputation of the distal phalanx of the ring finger of the right hand, and a "sort of claw hand", the third, fourth and fifth fingers being involved. Careful study of the testimony of this witness leads to the conclusion that he found no objective evidence of such an injury to the hand as would satisfactorily and reasonably explain the development of the claw hand condition.
The testimony of the other medical expert for plaintiff is contained in a deposition filed in evidence. This doctor first examined plaintiff's hand about the first week in December of 1941. Plaintiff had not presented himself for treatment of the hand but had casually appeared at the public health clinic in Shreveport, at which the doctor was employed, and an examination of the hand was made. The doctor testified that he found a bandage on the distal phalanx of the ring finger, which had been amputated, a swollen, inflamed condition of the hand, marked stiffness in the last three fingers, and atrophy of the hypothenar eminence. Another examination was made by this physician in February, 1942, at which time all evidence of active inflammation had disappeared, but there was still present some stiffness of the fingers, the grip in the right hand was not as strong, comparatively, as in the other hand, and there was still some atrophy of the hypothenar eminence.
Careful weighing of the testimony of plaintiff's medical witnesses, even in a light most favorable to plaintiff's contention, leaves the result far from conclusive in plaintiff's favor.
Consideration of the testimony of three medical experts, who testified on behalf of defendant, definitely establishes the conclusion that plaintiff's injury in no degree affected the entire hand, but was confined exclusively to the injury to the distal phalanx of the ring finger. The physician, who first treated the hand, testified unequivocally that there was no evidence of any injury of any character to the hand itself, and that the only injury was the amputation of the distal phalanx of the ring finger, which would result in a clean uncomplicated wound. On trial of the case, another physician testified on behalf of plaintiff that the supposedly stiffened fingers of plaintiff's right hand could be straightened and extended in a normal fashion, and, by manipulation, apparently *Page 650 
without pain to the plaintiff, demonstrated this fact to the Court.
Analysis of the medical testimony leaves no doubt in our minds as to the fact that plaintiff did not sustain any disabling injury to his right hand, and that the injury was confined to the amputation of the tip of the third finger of the hand. That there was evidence of stiffness and of a degree of atrophy along the hypothenar eminence, we have no doubt, but both the stiffness and the atrophy are completely explained as the result of disuse of the hand. If the disability could be attributed to an enforced disuse resulting from injuries sustained in the accident, of course, plaintiff would be entitled to recover, but we do not find this to be the case. On the contrary, we can only arrive at the conclusion that the disuse was voluntary on the part of the plaintiff, and the stiffness of the fingers and the atrophy of the hypothenar eminence are attributable to his wilful neglect.
If substantiating facts were necessary in aiding us to arrive at the conclusion stated, they are found in numerous instances quite apart and distinct from a consideration of the medical testimony. To begin with, it is unreasonable to conclude that one of the poles, apparently without application of any force sufficient to dislodge it from position, rolled up the incline from the depressed center section of the tramcar arm in such manner as to crush plaintiff's hand against the skidway. Plaintiff attempted to explain this point by testifying that the pole "had a bow, kind of, in it, in the middle, and both ends would be sitting on the truck". However this may have been, and even conceding that the action of the pole defied the established laws of physics, plaintiff failed to present any substantiating testimony or corroborating circumstances supporting his story of the accident. The evidence convinces us that a man pushing a tramcar and carelessly having a finger projecting over the side of the cross-arm would inevitably suffer the exact injury which we believe to have been suffered by plaintiff, i.e., the amputation of the tip of that finger as it was caught between the end of the steel cross-arm and the end of the steel skidway.
In our opinion plaintiff has failed to sustain the burden of proving his case by a preponderance of the evidence, either by logical conclusions to be adduced from the facts themselves or by medical testimony as to the physical results caused by the injury.
For the reasons assigned, the judgment appealed from is annulled and reversed, and plaintiff's suit is dismissed at his cost.